997 A.2d 283 (2010)
414 N.J. Super. 18
Debra DALESSIO and Amy Dalessio, Plaintiffs,
v.
Amanda M. GALLAGHER, Defendant-Appellant, and
Robert C. Jacobs, Jr., Defendant-Respondent.
DOCKET NO. A-0949-09T2.
Superior Court of New Jersey, Appellate Division.
Argued May 4, 2010.
Decided July 8, 2010.
*284 Jerome J. Turnbach, argued the cause for appellant (Horn, Turnbach & Rybar, attorneys; Robert R. Fuggi, Toms River, of counsel and on the brief).
Stephanie Ann Mitterhoff, Scotch Plains, argued the cause for respondent (Bramnick, Rodriguez, Mitterhoff, Grabas & Woodruff, attorneys; Ms. Mitterhoff, on the brief).
Before Judges SKILLMAN, FUENTES and SIMONELLI.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This appeal requires us to interpret the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), N.J.S.A. 2A:34-53 to -95, dealing with initial jurisdiction over child custody disputes.
Defendant Robert Jacobs is a lifelong resident of the State of Washington. Defendant Amanda Gallagher moved from New Jersey to Washington in the middle of 2007 and soon thereafter began a romantic relationship with Jacobs. This relationship resulted in the conception of a child, who was born in Washington in June 2008.
The parties had a tumultuous relationship, which resulted in them filing domestic violence complaints against each other in Washington. There is no need to describe those proceedings except insofar as they relate to custody of their child.
On March 5, 2009, Jacobs filed a petition for a parenting plan in the Superior Court of Washington. That same day, the court entered an order restraining Gallagher from removing the parties' child from Washington. Thereafter, the court entered an order for a temporary parenting plan providing for custody and parenting time with the child.
Within a short time after entry of this order, Jacobs and Gallagher reconciled, and on April 20, 2009, the Washington Superior Court dismissed the temporary parenting plan without prejudice. However, less than a month later, on May 17, 2009, Gallagher left Washington with the parties' child without Jacobs's consent and moved back to New Jersey.
The day after she arrived in New Jersey, Gallagher filed a domestic violence complaint against Jacobs which, among other things, sought temporary custody of the child.
Two days later, on May 20, 2009, Jacobs moved in Washington Superior Court for an order reinstating the temporary parenting plan he had voluntarily dismissed when he and Gallagher reconciled. The Washington court denied Jacobs's motion and directed him to file a petition for a new plan. On June 15, 2009, Jacobs filed a petition in Washington for a new parenting plan.
Meanwhile, back in New Jersey, Gallagher's mother and sister, plaintiffs Debra and Amy Dalessio, filed this action against *285 Jacobs and Gallagher seeking custody of the child. Plaintiffs alleged that Jacobs had a "long history of abuse and violence" and had "threatened ... Gallagher's life on several occasions." They also alleged that Gallagher was unable to take care of the child "due to legal issues[,]" which apparently referred to Gallagher's incarceration.
On June 9, 2009, the Family Part, invoking emergency jurisdiction, entered an order granting temporary custody of the child to the Dalessios, with Gallagher's consent, but over Jacobs's objection. Although the court subsequently determined that the domestic violence complaint Gallagher filed against Jacobs in New Jersey had not been substantiated, the order granting the Dalessios temporary custody of the child was continued in effect pending a determination of the issue of jurisdiction.
On September 3, 2009, the Family Part judge conducted a telephone conference with a commissioner of the Washington Superior Court, which confirmed that Jacobs had filed a petition for a new parenting plan that was currently pending in Washington.
After full briefing and argument, the Family Part judge issued a comprehensive written opinion, which determined that Washington has exclusive jurisdiction under the UCCJEA to determine custody of the parties' child and that the Dalessios' complaint should be dismissed. Nevertheless, the order continued temporary custody of the child with the Dalessios under the emergency jurisdiction provision of the UCCJEA, pending further action by the Washington Superior Court.
Gallagher filed a notice of appeal from this order[1] and a motion for stay pending appeal, which was denied by both the trial court and this court.[2]
This appeal is governed by the UCCJEA, which was adopted by New Jersey in 2004 and by Washington in 2001, see Table of Jurisdictions Wherein Act Has Been Adopted (preceding N.J.S.A. 2A:34-53), to replace the former Uniform Child Custody Jurisdiction Act (UCCJA), N.J.S.A. 2A:34-28 to -52 (repealed). We have previously indicated that the UCCJEA "should be interpreted so as to avoid jurisdictional competition and conflict and require cooperation with courts of other states as necessary to ensure that custody determinations are made in the state that can best decide the case." Griffith v. Tressel, 394 N.J.Super. 128, 138, 925 A.2d 702 (App.Div.2007).
One of the primary objectives of the UCCJEA was to "prioritize[ ] home state jurisdiction" over other bases for a state assuming jurisdiction of a child custody dispute. UCCJEA, Prefatory Note, 9 (Part IA) U.L.A. 651 (1999); see also id. § 201 cmts. 1 & 2, at 672. This objective was noted in the sponsor's statement to the legislation by which New Jersey adopted the UCCJEA. S. Judiciary Comm., Statement to Senate Committee Substitute for Senate Bill No. 150 (2004). ("[The UCCJEA] gives priority to the home state as a ground for taking jurisdiction.") (reprinted following N.J.S.A. 2A:34-53). Therefore, any ambiguity in the UCCJEA should be resolved in light of this legislative objective. See State v. Drury, 190 N.J. 197, 209, 919 A.2d 813 (2007).
*286 The section of the UCCJEA that determines which state has initial child custody jurisdiction provides in pertinent part:
a. ... [A] court of this State has jurisdiction to make an initial child custody determination only if:
(1) this State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;
(2) a court of another state does not have jurisdiction under paragraph (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction ... and:
(a) the child and the child's parents, or the child and at least one parent... have a significant connection with this State other than mere physical presence; and
(b) substantial evidence is available in this State concerning the child's care, protection, training and personal relationships[.]
....
b. Subsection a. of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this State.
[N.J.S.A. 2A:34-65; Wash. Rev.Code § 26.27.201.]
Thus, unless the home state declines jurisdiction, a New Jersey court cannot assume "significant connection" jurisdiction over an initial child custody determination under N.J.S.A. 2A:34-65(a)(2) if another state has jurisdiction under N.J.S.A. 2A:34-65(a)(1) either as (1) the child's home state or (2) the child's home state within six months prior to the commencement of the proceeding and the child is absent from the home state but a parent continues to live in that state.
N.J.S.A. 2A:34-54 and Wash. Rev.Code § 26.27.021(7) define "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." Under this definition, New Jersey was clearly not the "home state" of the parties' child when the Dalessios commenced this child custody proceeding on June 9, 2009, because Gallagher had brought the child to New Jersey less than a month earlier, on May 17, 2009.
Nevertheless, Gallagher argues that Washington also was not the child's "home state" under this definition because, having been in New Jersey for twenty-three days when this action was brought, the child had not lived with Jacobs in Washington for at least six consecutive months "immediately before" commencement of this action. Consequently, according to this argument, the jurisdiction to determine custody of the child can be assumed by the New Jersey courts under N.J.S.A. 2A:34-65(a)(2) because she and the child have a "significant connection" with New Jersey, N.J.S.A. 2A:34-65(a)(2)(a), and there is "substantial evidence ... available in [New Jersey] concerning the child's care, protection, training and personal relationships[,]" N.J.S.A. 2A:34-65(a)(2)(b).
We reject this argument because it would effectively read one of the predicates for home state jurisdiction under N.J.S.A. 2A:34-65(a)(1) out of the statute. Home state jurisdiction is established under this section and its Washington counterpart if a state either "[1] is the home state of the child on the date of the commencement of the proceeding, or [2] was the home state of the child within six *287 months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State." N.J.S.A. 2A:34-65(a)(1); Wash. Rev.Code § 26.27.201(1)(a) (emphasis added). The circumstances of the parties' child fall squarely within the second factual predicate for home state jurisdiction set forth in N.J.S.A. 2A:34-65(a)(1) and its Washington counterpart. Washington was her home state "within six months before the commencement of the [New Jersey] proceeding" indeed, up to twenty-three days beforeand even though she was "absent from [Washington]," one of her parents, Jacobs, "continues to live in [Washington]." The definition of "home state" in N.J.S.A. 2A:34-54 cannot reasonably be read to negate the clear intent of N.J.S.A. 2A:34-65(a)(1) and Wash. Rev.Code § 26.27.201(1)(a) to confer home state jurisdiction upon Washington in this circumstance, especially in light of the UCCJEA's objective to "prioritize[ ] home state jurisdiction" over child custody disputes. UCCJEA, supra, Prefatory Note at 651.
This conclusion is supported by decisions in other jurisdictions that have interpreted their analogues to N.J.S.A. 2A:34-54 and N.J.S.A. 2A:34-65. See, e.g., Welch-Doden v. Roberts, 202 Ariz. 201, 42 P.3d 1166, 1169-76 (Ct.App.2002); Stephens v. Fourth Judicial Dist. Court, 331 Mont. 40, 128 P.3d 1026, 1028-29 (2006); Christine L. v. Jason L., 23 Misc.3d 1039, 874 N.Y.S.2d 794, 796-97 (Fam.Ct.2009); Rosen v. Celebrezze, 117 Ohio St.3d 241, 883 N.E.2d 420, 427-29 (2008); see generally David Carl Minneman, Annotation, Construction and Operation of Uniform Child Custody Jurisdiction and Enforcement Act, 100 A.L.R.5th 1, 23-29 (2002). In Stephens, the court explained the reasons for concluding that the apparent inconsistency between the sections of the UCCJEA codified as N.J.S.A. 2A:34-54 and N.J.S.A. 2A:34-65(a)(1) should be resolved in a manner that gives full effect to both factual predicates for home state jurisdiction under N.J.S.A. 2A:34-65(a)(1):
Considerable confusion has arisen in this matter regarding how to analyze the children's "home state" for purposes of determining jurisdiction. Such confusion seems understandable in light of the apparent contradictory language set forth in the Montana statutes. [Montana's version of N.J.S.A. 2A:34-65(a)(1)] provides that Montana has jurisdiction to make an initial child custody determination if it is the child's home state "within six months before" the commencement of the child custody proceeding. By contrast, "home state" as defined under [Montana's version of N.J.S.A. 2A:34-54] requires a child to have lived in Montana for "at least 6 consecutive months immediately before the commencement of a child custody proceeding."
....
The drafters intended that the UCCJEA should be construed to promote one of its primary purposes of avoiding the jurisdictional competition and conflict that flows from hearings in competing states when each state substantively reviews subjective factors, such as "best interest," for purposes of determining initial jurisdiction. We thus resolve any statutory conflict in the application of home state jurisdiction in a manner consistent with the UCCJEA's intent of strengthening the certainty of home state jurisdiction.
As a result, we hold that "home state" for purposes of determining initial jurisdiction under [Montana's version of N.J.S.A. 2A:34-65(a)(1)] is not limited to the time period of "6 consecutive months immediately before the commencement of a child custody proceeding." The applicable *288 time period to determine "home state" in such circumstances should be "within 6 months before the commencement of the [child custody] proceeding." This interpretation promotes the priority of home state jurisdiction that the drafters of the UCCJEA specifically intended.
[128 P.3d at 1028-29 (citation omitted).]
Applying the same reasoning to this case, we conclude that Washington has exclusive jurisdiction to determine the custody dispute over the parties' child because it was "the home state of the child within six months before the commencement of the [custody proceedings in both Washington and New Jersey] and the child is absent from [Washington] but a parent [Jacobs] ... continues to live in [Washington]." N.J.S.A. 2A:34-65(a)(1); Wash. Rev.Code § 26.27.201(1)(a).
Gallagher relies heavily upon our decisions in Bless v. Bless, 318 N.J.Super. 90, 723 A.2d 67 (App.Div.1998), and Ganz v. Rust, 299 N.J.Super. 324, 690 A.2d 1113 (App.Div.1997). However, Bless and Ganz were both decided under the UCCJA, which was superseded by the provisions of the UCCJEA, particularly N.J.S.A. 2A:34-65, which reject the jurisdictional rules that governed child custody disputes under the UCCJA and instead assign priority to home state jurisdiction. See Welch-Doden, supra, 42 P.3d at 1174-75.
Our conclusion that Washington has exclusive home state jurisdiction to determine the dispute concerning the custody of the parties' child makes it unnecessary to consider the parties' other arguments.
Affirmed.
NOTES
[1] The Dalessios did not file a notice of appeal and have not participated in this appeal.
[2] Jacobs and Gallagher have entered into a joint custodial arrangement by consent pending the determination of the issue of custody, which is currently scheduled to be heard by the Washington Superior Court this September.