**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.Y., Z.Y., and P.Y.**

**No. 20-0513** (Taylor County 18-JA-112, 18-JA-111, and 18-JA-110)

**MEMORANDUM DECISION**

Petitioner Father F.Y., by counsel Katica Ribel, appeals the Circuit Court of Taylor County's June 17, 2020, order terminating his parental rights to A.Y., Z.Y., and P.Y.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Terri L. Tichenor, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in assuming jurisdiction over the proceedings and in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner and the mother engaged in domestic violence, substance abuse, and criminal activity. According to the DHHR, the mother and the children had relocated to West Virginia from Virginia earlier in September of 2018 to live with the maternal grandmother. While in West Virginia, the mother was arrested for possession of methamphetamine and incarcerated. The DHHR alleged that petitioner had recently been released from incarceration and was subject to an eviction proceeding in Virginia. During the DHHR's interviews with the children, they disclosed witnessing domestic violence between their parents. Further, the DHHR alleged that the parents had been unable to maintain a stable residence, and the children changed schools

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

multiple times in Virginia in the past year as a result. Petitioner waived his right to a preliminary hearing, and the DHHR placed the children with the maternal grandmother, where they remained throughout the proceedings.

Petitioner stipulated to the allegations of abuse and neglect in December of 2018, and the circuit court adjudicated him as an abusing parent. Thereafter, the circuit court granted petitioner a three-month post-adjudicatory improvement period, which was extended in March of 2019. Petitioner was later granted a six-month post-dispositional improvement period in August of 2019. On February 7, 2020, petitioner filed a motion to dismiss the proceeding for a lack of jurisdiction, alleging that Virginia was the home state of the children under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), and West Virginia erred in assuming jurisdiction.

The circuit court held the final dispositional hearing on February 10, 2020. The court heard argument related to petitioner's motion to dismiss. The circuit court found that the mother brought the children to West Virginia in September of 2018 and was arrested in Putnam County, West Virginia, for possession of methamphetamine soon thereafter. The circuit court further found that, upon arrest, the mother provided a West Virginia driver's license for identification, which displayed a West Virginia address, and she also provided a different West Virginia address as her mailing address. The circuit court concluded that the mother "held herself out to the Magistrate Court of Putnam County as a resident of West Virginia." The circuit court also referenced the maternal grandmother's prior testimony that the mother was relocating to West Virginia, which was why the children were at her home when the petition was filed. The circuit court concluded that there was substantial contact with West Virginia "that [was] beyond just passing." Moreover, the circuit court noted on the record that it had contacted the twenty-sixth district court of Virginia, where petitioner and the mother had prior Child Protective Services referrals, and that court advised that there were no pending cases against either parent. Furthermore, the twenty-sixth district court of Virginia declined to exercise jurisdiction over the instant proceedings. Thus, the circuit court concluded that Virginia had declined to exercise jurisdiction over these proceedings and petitioner and the mother had substantial contacts with West Virginia such that jurisdiction was proper, and petitioner's motion to dismiss was denied.

The DHHR moved to terminate petitioner's parental rights because he had failed to complete the terms of his case plan and the children had been out of his care for seventeen of the preceding twenty-two months. The circuit court heard evidence that petitioner continued to live in Virginia throughout the proceedings, despite repeated notice that the DHHR could not arrange services for petitioner in Virginia. Further, although petitioner lived within three miles of the West Virginia border, he would not travel into West Virginia for services and refused to move into West Virginia. The DHHR worker assigned to the case testified that petitioner did not participate in a scheduled psychological evaluation and could not be referred to a random drug screening facility in Virginia. Moreover, petitioner admitted that he had not completed any services related to the conditions of domestic violence. During her testimony, the mother admitted that she and petitioner could have relocated to West Virginia, but petitioner did not want to relocate.

2

Ultimately, the circuit court found that petitioner had failed to comply with the terms and conditions of his improvement periods and that the "core issues that led to the filing of the [p]etition ha[d] not been addressed." The circuit court further found that petitioner chose "to blame the DHHR for [his] failure to progress rather than taking any initiative." The circuit court concluded that it was in the children's best interests to terminate petitioner's parental rights. Accordingly, the circuit court terminated petitioner's parental rights by its June 17, 2020, order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in assuming jurisdiction over the abuse and neglect proceedings. He asserts that Virginia would be the "home state" of the children for purposes of the UCCJEA, which would give Virginia jurisdiction to make initial child custody determinations. We find no error in the proceedings below.

West Virginia Code § 48-20-201 provides the following framework to determine whether a court of this state has jurisdiction over a child custody proceeding:[3]

> a) Except as otherwise provided in section 20-204, a court of this state has jurisdiction to make an initial child custody determination only if:
>
> (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six

---

[2]The mother's parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption by a relative.

[3]It is undisputed that a child abuse and neglect proceeding is a "child custody proceeding" for the purposes of the UCCJEA. *See* W. Va. Code § 48-20-102(d).

months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) A court of another state does not have jurisdiction under subdivision (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 20-207 or 20-208, and:

(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;

(3) All courts having jurisdiction under subdivision (1) or (2) of this subdivision have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 20-207 or 20-208; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2) or (3) of this subsection.

This Court has outlined the proper analysis in determining jurisdiction as such:

[A] court of this state must satisfy one of the four bases of jurisdiction set forth in [W. Va. Code § 49-20-201(a)]. These four bases have been aptly summarized as 1) "home state" jurisdiction; 2) "significant connection" jurisdiction; 3) "jurisdiction because of declination of jurisdiction"; and 4) "default" jurisdiction. *See Rosen v. Celebrezze,* 117 Ohio St.3d 241, 883 N.E.2d 420, 427 (2008). These jurisdictional bases do not operate alternatively to each other, but rather, in order of priority—reaching the next basis of jurisdiction only if the preceding basis does not resolve the jurisdictional issue.

*In re K.R. and P.R.*, 229 W. Va. 733, 740, 735 S.E.2d 882, 889 (2012).

Here, while petitioner asserts that Virginia was the "home state" of the children, the record provides that a court in that state declined to exercise jurisdiction over the instant proceeding. The circuit court then properly considered the second jurisdictional basis, "significant connection jurisdiction," and found that the mother and children had a significant connection to West Virginia. We agree with the circuit court that the mother provided compelling evidence that she had a significant connection to West Virginia in that she provided a West Virginia driver's license and a West Virginia address to the Magistrate Court of Putnam County. Further, the circuit court heard testimony from the grandmother that the mother intended to relocate the children to West Virginia and that petitioner and the mother did not have a suitable residence for the children in Virginia. Moreover, the circuit court correctly found that

there was substantial evidence available in West Virginia concerning the children's care, protection, and the abuse and neglect that gave rise to the petition.

Alternatively, even assuming, *arguendo,* that the circuit court did not have significant connection jurisdiction, the court undoubtedly had jurisdiction under the third option specified in West Virginia Code § 48-20-201(a): "declination jurisdiction." As this Court recently held

> One of the requirements under West Virginia Code § 48-20-201(a)(3) (2001) for a court to obtain subject matter jurisdiction over an initial child custody determination where another state has either home state jurisdiction or significant connection jurisdiction, is that a court of the other state must decline to exercise jurisdiction. This requirement is not satisfied by evidence that some other person or entity in the other state has declined jurisdiction.

Syl. Pt. 9, *In re Z.H.*, -- W. Va. --, 859 S.E.2d 399 (2021). As mentioned above, the Virginia court declined to exercise jurisdiction over this matter on the basis that West Virginia was the more appropriate forum. *See In re J.C.*, 242 W. Va. 165, 832 S.E.2d 91 (2019) (recognizing that West Virginia would have jurisdiction pursuant to the UCCJEA if the home state court declined to exercise jurisdiction). Therefore, we find no error in the circuit court assuming jurisdiction over the initial child custody proceeding based on Virginia's declination of jurisdiction and the significant connections that the mother purported to have with West Virginia. Petitioner is entitled to no relief.

Petitioner also argues that the circuit court erred in terminating his parental rights, rather than imposing a less restrictive dispositional alternative. Petitioner emphasizes his "past and current willingness to comply with the terms of his improvement period," including his completion of parenting classes and attendance at court hearings. Petitioner also states, without support, that termination of his parental rights was not in the children's best interests. However, petitioner fails to recognize the substantial evidence of noncompliance over multiple improvement periods, and, on that basis, we find he is not entitled to relief.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. Further, pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may find that there is no reasonable likelihood that conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, petitioner failed to participate in the terms of a reasonable family case plan over the course of twelve months of improvement periods. The circuit court found that petitioner failed to

participate in a psychological evaluation or in random drug screening. Further, petitioner admitted that he had not participated in any services to remedy the conditions of domestic violence. These findings support the circuit court's conclusion that the "core issues" raised in the petition had not been addressed during the improvement periods, and, critically, petitioner does not challenge these findings on appeal. Therefore, we find that the record fully supports a finding that there was no reasonable likelihood that petitioner could correct the conditions of neglect or abuse in the near future.

Furthermore, petitioner's "past and current willingness to comply with the terms of his improvement period" is unpersuasive in light of the evidence that there was no reasonable likelihood that he could substantially correct the conditions of abuse and neglect in the near future. As this Court has consistently held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on this finding, the circuit court was not required to impose a less restrictive dispositional alternative and was within its discretion in terminating petitioner's parental rights. Moreover, to the extent that petitioner is essentially requesting an additional improvement period, he fails to recognize that West Virginia Code § 49-4-610(9) imposes a time limit for improvement periods that he has already exceeded.[4] The circuit court did not find any compelling circumstances to extend the statutory limits for the improvement period.

> Although it is sometimes a difficult task, the trial court must accept the fact that the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

---

[4]West Virginia Code § 49-4-610(9) provides

> no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996). *See also In re Cesar L.*, 221 W. Va. 249, 258, 654 S.E.2d 373, 382 (2007) ("Ensuring finality for these children is vital to safeguarding their best interests so that they may have permanency and not be continually shuttled from placement to placement."). Based on the record provided, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 17, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: August 27, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton